UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| LOUISE F., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1905-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Louise F. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 10. Plaintiff also filed a reply brief. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on January 8, 2014, alleging disability beginning August 11, 2012, (the disability onset date), due to aa variety of musculoskeletal impairments. Transcript ("Tr.") 159-65, 166-71, 195. The claims were denied

initially on April 24, 2014, after which Plaintiff requested a hearing. Tr. 10. On May 17, 2016, Administrative Law Judge Scott Johnson ("ALJ Johnson") conducted a video hearing from Kansas City, Missouri. Tr. 10. Plaintiff appeared and testified from Buffalo, New York, and was represented by Kelly Laga, an attorney. *Id*. Jennifer Larue, an impartial vocational expert ("VE"), also appeared and testified telephonically. *Id*.

ALJ Johnson issued an unfavorable decision on August 4, 2016, finding that Plaintiff was not disabled. Tr. 7-19. On May 24, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. ALJ Johnson's August 4, 2016 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Plaintiff timely filed a complaint in the United States District Court for the Western District of New York, and on June 27, 2019, the Court issued an order remanding the decision to the Commissioner for further administrative proceedings. Tr. 485-92. Thereafter, on July 22, 2019, the Appeals Council ordered a new administrative hearing. Tr. 493, 480.

On July 13, 2020, Administrative Law Judge Stephen Cordovani ("the ALJ"), held a telephone hearing.[1] Tr. 409. Plaintiff appeared and testified at the hearing and was represented by Kathryn Eastman, an attorney. *Id*. VE Michael Smith also appeared and testified at the hearing. *Id*. On September 2, 2020, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. Tr. 406-23. The ALJ's became the final decision of the Commissioner, and Plaintiff appealed the decision directly to this Court.

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 384.

## LEGAL STANDARD

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

**II.    The Sequential Evaluation Process**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 2, 2020 decision:

1. 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 11, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to lift up to 20 pounds occasionally, and up to 10 pounds frequently, but she can carry up to 50 pounds occasionally and up to 20 pounds continuously. Can sit two (2) hours continuously and up to seven (7) hours total. She can stand up to three (3) hours continuously and four (4) hours total; she can walk up to three (3) hours continuously and up to five (5) hours total. She can do frequent feeling, frequent push and pull. She can use frequent foot controls. She can use frequent ramps and stairs, she can occasionally stoop, kneel, crouch, crawl, and she can use no ladders/ropes/scaffolds; she can do no balancing activities on uneven ground. She can have no more than frequent exposure to extreme humidity and wetness; no more than frequent exposure to concentrated fumes, odors, dusts, gases, poor ventilation; she can have no more than frequent exposure to extreme heat. She can have occasional exposure to extreme cold; she can have occasional exposure to dangerous moving mechanical parts; occasional driving; and no work at unprotected heights. She can have moderate noise exposure.[2]

6. The claimant is capable of performing past relevant work as a nanny (DOT# 301.677-010). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 406-23.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on January 8, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 423. The ALJ also determined that based on the application for supplemental security benefits protectively filed on January 8, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

---

[2] This residual functional capacity equates to light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## ANALYSIS

Plaintiff asserts three points of error. Plaintiff first argues that the ALJ failed to properly evaluate her impairments at step two of the sequential evaluation. *See* ECF No. 8-1 at 9-18. Specifically, Plaintiff argues that the ALJ erred by finding her thumb and wrist impairments and her cubital and carpal tunnel syndrome, to be non-severe impairments. *See id*. at 13. Plaintiff also maintains that the ALJ failed to follow the District Court's order remanding the case for the same error. *Id*. Next, Plaintiff argues that the ALJ crafted an "internally inconsistent" RFC with respect to the lifting and carrying limitations. *See id*. at 18-21. Finally, Plaintiff argues that the ALJ failed to consider that Plaintiff's past relevant work as a nanny was performed under "special conditions." *See id*. at 21-23.

In response, the Commissioner argues that the ALJ properly determined at step two that Plaintiff's cubital and carpal tunnel syndrome and right thumb and left wrist impairments were non-severe and required no further RFC limitations. *See* ECF No. 10-1 at 13-18. Next, the Commissioner argues that any internal inconsistency in the RFC Finding was harmless because Plaintiff has not shown that she lacks the RFC to perform her past relevant work, as was her burden. *See id*. at 18-28. In response to Plaintiff's final point, the Commissioner argues that the ALJ properly identified Plaintiff's past relevant work as a nanny, and Plaintiff did not meet her burden of establishing that she worked under special conditions. *See id*. at 18-20.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, and his finding that Plaintiff was not disabled was supported by substantial evidence. With respect to Plaintiff's cervical and lumbar degenerative disc disease, the ALJ properly considered Plaintiff's largely normal examination findings, conservative course of treatment, response to medication, and daily activities, including part-time work. Furthermore, Plaintiff's limited treatment for her hand and wrist conditions and normal examination findings, including intact hand and finger dexterity and full grip strength, support the ALJ's finding that these conditions were not severe and did not require significant manipulative limitations, beyond a limitation to frequent feeling. Plaintiff retained the capacity to perform light work and, therefore, could return to her past relevant work as a nanny.

The record reflects that Plaintiff has a history of back and neck pain going back to a motor vehicle accident around twenty years ago. Tr. 270, 703, 713-32. In 2002, orthopedist Cameron Huckell, M.D. ("Dr. Huckell"), opined that Plaintiff was temporarily totally disabled for a period when Plaintiff missed work following the 2001 motor vehicle accident. Tr. 715-16. In 2006, Dr. Huckell opined that Plaintiff's impairment was "permanent and serious" and assessed a "50% disability." Tr. 269-71.

Plaintiff sought treatment with primary care physician R. Nagalla, M.D. ("Dr. Nagalla"), beginning in August 2012 for complaints of back pain and neck pain. Tr. 299. At her initial visits, Plaintiff showed pain and limited movement at the cervical and lumbosacral spine, but her gait was normal, and her musculoskeletal exams showed normal strength in all extremities. Tr. 299-305. Dr. Nagalla prescribed hydrocodone and advised Plaintiff to exercise. Tr. 300-03. In January

2013, Dr. Nagalla noted that Plaintiff was "unable to work for eight weeks," but treatment records for the remainder of 2013, 2014, 2015, and early 2016 continued to show normal gait and full muscle strength. Tr. 304-05, 310, 314-21, 325-27, 333-35, 337-38, 342-47, 355-56, 359, 363-67, 372-74, 377. An MRI of the cervical spine in January 2016 showed small or minimal disc herniation, mild disc bulges and anterolisthesis, some mild to moderate stenosis, and other abnormalities. Tr. 376.

In April 2014, Plaintiff presented for an internal medicine consultative exam with Abrar Siddiqui, M.D. ("Dr. Siddiqui"). Tr. 286-91. Plaintiff rated the intensity of her neck and back pain as 1 to 3 out of 10. Tr. 287. She reported that her brother did cleaning, laundry, and shopping for her, but she cooked, showered and dressed daily, and enjoyed watching television and observing kite flying. Tr. 288. On examination, Dr. Siddiqui observed that Plaintiff had normal gait and stance; full squat; used no assistive devices; rose from a chair and walked on her heels and toes without difficulty; and did not need help changing for the exam or getting on and off the exam table. Tr. 288. Her musculoskeletal exam showed full range of motion of the cervical spine, with complaints of pain during neck rotation. Tr. 289. Her thoracic spine showed no scoliosis, kyphosis, or other abnormalities. Tr. 289. Her lumbar spine showed various range of motion deficits, but a straight leg raise test was negative bilaterally. Tr. 289. Despite complaints of shoulder pain, Plaintiff had full range of motion of her shoulders, elbows, forearms, and wrists, she displayed no sensory, motor, or reflex deficits, and no muscle atrophy; her hand and finger dexterity were intact; and her grip strength was full bilaterally Tr. 289. Tr. 289. A lumbosacral spine x-ray showed spondylosis and straightening, but no compression fracture. Tr. 291. Dr. Siddiqui opined that Plaintiff had mild limitations in the ability to do climbing, pushing, pulling, or carrying heavy objects. Tr. 290.

A lumbosacral x-ray in October 2015 showed no significant acute osseous lesion. Tr. 853. A cervical spine x-ray in June 2017 showed some subtle anterolisthesis, "stable with flexion or extension imaging," and no acute bony abnormality. Tr. 838. An x-ray of Plaintiff's left wrist, taken in October 2018, showed osteoporosis with degenerative osteoarthritis but without acute fracture or dislocation post trauma. Tr. 773.

In March 2016, Plaintiff sought pain management treatment with Daniel Salcedo. M.D. ("Dr. Salcedo"), at Advanced Pain & Wellness, for back and neck pain and associated symptoms. Tr. 379. At her initial visits, Plaintiff showed some tenderness and decreased range of motion in the neck and back and was positive for cubital and carpal tunnel syndrome on the left, but she had full range of motion in her elbows and wrists, negative straight leg raise testing, no muscular atrophy, and her neurological exam showed full motor strength, normal reflexes and intact sensation. Tr. 382-86, 390-93. In April 2016, Dr. Salcedo observed that Plaintiff seemed more comfortable, ambulated independently without support, and had fair upright posture and normal gait. Tr. 396. In May 2016, Plaintiff reported that her medications were helping and caused no side effects. Tr. 400.

Plaintiff sought treatment with primary care provider Arvind Wadhwa, M.D. ("Dr. Wadhwa"), beginning in July 2016. Tr. 991. Upon her initial exam, Plaintiff showed normal gait and reflexes and no spinal tenderness. Tr. 992. Plaintiff reported that she had been babysitting her grandchildren. Tr. 992. At an acute visit in June 2017, Plaintiff reported to Dr. Wadhwa that she had not been working but again noted that she had been "babysitting grandkids." Tr. 994. At another acute visit in April 2018 for treatment of a right thumb sprain, Dr. Wadhwa observed mild swelling and some tenderness but good range of motion of the right thumb, and Plaintiff's normal gait and normal upper and lower extremities were also noted. Tr. 1001. Imaging of her

right hand showed no displaced fracture or dislocation. Tr. 1013. Dr. Wadhwa opined that Plaintiff could return to work but lift no more than 15 pounds for the following three weeks. Tr. 1002. In July 2018, Plaintiff complained of ongoing pain and swelling in her right thumb and stated that she was not taking any medications for her back pain. Tr. 1003. In April 2019, Plaintiff complained of left hip pain after attempting a "plié kick" but walked with a normal gait and had no further complaints pertaining to the right thumb. Tr. 1009-10.

Plaintiff also treated with Adam Norman, M.D. ("Dr. Norman"), at General Physician PC, beginning in October 2019. Tr. 1030. At her initial visit, Plaintiff complained of back pain from a recent injury when she bent over to lift a 50-pound box at the pizzeria where she worked. Tr. 1032. Dr. Norman observed slow gait, discomfort to palpation over the thoracic and lumbar spine, and somewhat decreased range of motion in the neck, but she had full strength, intact sensation, and no swelling or tenderness. Tr. 1033-34. A November 2019 lumbar MRI showed mild degenerative disc disease and osteoarthritis. Tr. 1092. A February 2020 treatment record notes that she denied any change in the location, character, or severity of her neck and back pain. Tr. 1037. She scheduled a visit with a spine specialist later that month after declining earlier appointments due to work conflicts. Tr. 1038.

Plaintiff also treated with pain specialist Pratibha Bansal, M.D. ("Dr. Bansal"), beginning in June 2020. Tr. 1046. At her initial visit, Dr. Bansal observed tenderness to palpation of the lumbosacral spine and muscle spasm, but Plaintiff otherwise had full strength and completely normal range of motion throughout. Tr. 1047-48. Two weeks later, Plaintiff's physical exam again showed full strength, with some reduced range of motion since a recent fall. Tr. 1073-75. Sensation and reflexes were normal in her upper and lower extremities. Tr. 1075.

In November 2019, Plaintiff presented for an internal medicine consultative exam with Nikita Dave, M.D. ("Dr. Dave"). Tr. 702-12. Plaintiff reported intermittent neck pain and constant low back pain aggravated by transfers from sitting to lying down, but she also reported relief from heat, medications, and using an over-the-counter back brace. Tr. 703. She also reported cooking six times a week, dressing as needed, watching television, crocheting, and sewing. *Id*. On examination, Plaintiff had normal gait and stance; walked on heels and toes without difficulty; used no assistive devices; needed no help changing for the exam or getting on and off the table; rose from a chair without difficulty; and her squat was full. Tr. 704. Her cervical and lumbar spine showed reduced range of motion with some spasm and tenderness noted, but straight leg raise testing was negative bilaterally; she had normal reflexes and sensation and full strength in all extremities; and her neck showed no abnormalities. Tr. 704-05. Range of motion was full in all extremities, including at the shoulders, elbows, forearms, and wrists bilaterally. Tr. 704. Hand and finger dexterity were intact, and grip strength was full. Tr. 705.

Dr. Dave concluded that Plaintiff had moderate limitations for repetitive bending and twisting through the cervical and lumbar spine; for lifting, carrying, pushing, pulling, or maintaining a non-neutral spinal position for prolonged periods; and for prolonged sitting, walking, and standing. Tr. 705. Dr. Dave also completed a Medical Statement of Ability to Do Work-Related Activities (Physical), in which she assessed that Plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally; carry up to 20 pounds continuously and up to 50 pounds occasionally; sit up to three hours continuously and up to seven hours total; stand up to four hours continuously and total; and walk up to four hours continuously and up to five hours total. Tr. 706-07. She could frequently feel, push, and pull; and continuously reach handle, and finger. Tr.

708. She had additional restrictions on certain postural activities and exposure to certain environmental conditions. Tr. 709-10.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily

required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera*, 697 F.3d at 151 ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Plaintiff first challenges the ALJ's finding that her cubital and carpal tunnel syndrome and right thumb and left wrist impairments were not severe, or in the alternative, that the ALJ did not sufficiently articulate how these impairments were accounted for in the RFC finding. *See* ECF No. 8-1 at 13-18. However, contrary to Plaintiff's arguments, the ALJ reasonably

determined that these impairments were not severe, and Plaintiff has not met her burden of proving otherwise.

At the second step of the sequential evaluation, an ALJ considers whether the claimant has at least one severe impairment or combination of impairments that meets the twelve-month durational requirement for establishing disability. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not "severe" if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities, which are defined as the abilities and aptitudes to do most jobs, and include physical functions such as walking, standing, sitting, lifting, carrying, and handling. 20 C.F.R. § 416.922; SSR 85-28, 1985 WL 56856 (1985); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant does not have any severe impairments, then the claimant is not disabled, and the sequential evaluation ends. *Id*. However, if the claimant has at least one severe impairment or combination of impairments, then the evaluation continues, and the ALJ considers all impairments and symptoms when evaluating RFC. *See* 20 C.F.R. § 404.1529, 404.1545(a)(2).

Furthermore, it is Plaintiff's burden to demonstrate that she has a severe impairment. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). The mere presence of an impairment, or that a person has been diagnosed and/or treated for an impairment is not, by itself, sufficient to render a condition severe. *Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013); *see Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 ((N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (step two is applied to screen out *de minimis* claims).. Instead, a claimant must demonstrate an impairment that "significantly limits [his] physical or mental ability to perform basic work activities." *Barnhart v. Thomas*, 540 U.S.

20, 25 (2003). Moreover, an impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). After extensive review of the record, the Court finds that the ALJ correctly assessed Plaintiff's severe impairments at step two.

First, the ALJ carefully considered Plaintiff's right thumb and left wrist impairments and found them to be non-severe. Tr. 412-13. The ALJ explained that Plaintiff's acute complaints were resolved or were no more than minimal. Tr. 413. For example, the ALJ acknowledged that imaging of Plaintiff's left wrist in October 2018 showed degenerative changes post trauma but noted that she reported no ongoing treatment or symptoms. Tr. 413, 773. With respect to her right thumb injury, Plaintiff cites only two treatment notes complaining of pain and symptoms in April and July 2018 (Tr. 1001, 1003), which is insufficient to meet the durational requirement for disability under the Act. *See* ECF No. 8-1 at 15. As the ALJ further noted, Plaintiff injured her right thumb in April 2018, but this was an acute injury which resolved with treatment, and she had full grip strength on examination in November 2019. Tr. 412, 704-05, 812, 1001, 1003, 1013. *See Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014) (finding no severe impairment where a claimant benefitted from treatment in ways that minimized the impact of her impairment); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that a condition was not severe where it improved with treatment). Together, this evidence supports the ALJ's conclusion that Plaintiff's right thumb and left wrist impairments were not severe. *See* 20 C.F.R. §§ 404.1509, 416.909.

With respect to Plaintiff's cubital and carpal tunnel syndrome, the ALJ considered Plaintiff's testimony at the 2020 hearing that she had received no treatment for this condition. Tr. 413, 462. The fact that a plaintiff received only conservative treatment is evidence that can weigh against allegations of disabling symptoms. *See Penfield v. Colvin*, 563 F. App'x 839, 840

(2d Cir. 2014); *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008). Similarly, a claimant's allegations of disability are undermined by a failure to seek regular treatment for the claimant's allegedly disabling conditions. *Naval v. Astrue*, 303 F.App'x 18, 20 (2d Cir. Dec. 16, 2008) (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)); *see also Salvaggio v. Apfel*, 23 F.App'x 49, 51 (2d Cir. Nov. 6, 2001) ("the result of the plaintiff's choice to seek only minimal medical attention of her symptoms . . . supports the finding that the plaintiff was not under a disability").

The ALJ also acknowledged Plaintiff's diagnosis in 2014 and positive tests in 2016 but noted that these findings had "not been further replicated in the record." Tr. 413, 334, 383, 392, 397-98, 403. The ALJ further noted that these conditions were observed to be "fairly stable" in May 2016 (Tr. 413, 405), and physical exams in April 2014 and November 2019 showed full strength in the upper extremities and full grip strength, with intact hand and finger dexterity. Tr. 413, 289-90, 705. In addition, as the ALJ pointed out, Plaintiff reported no hand or carpal tunnel complaints to Dr. Dave at her November 2019 internal medicine consultative exam, and reported daily activities that required hand dexterity, "inconsistent with a finding that carpal or cubital tunnel cause[d] limitations." Tr. 413, 703. Specifically, Plaintiff reported cooking six times per week, dressing as needed, and enjoying crocheting and sewing. Tr. 413, 703. As the ALJ further noted, Dr. Dave assigned no limitations relative to any hand or wrist impairments, nor did Dr. Siddiqui at the April 2014 internal medicine consultative exam. Tr. 413. Furthermore, noted the ALJ, the record demonstrated "no treatment, surgery, nor prescribed braces or splints for any carpal or cubital tunnel condition." *Id*. Thus, Plaintiff's daily activities and treatment modalities do not support a finding that Plaintiff's condition is disabling. Accordingly, the ALJ properly considered the totality of the evidence in the record, and the ALJ's finding is well supported by substantial evidence.

While Plaintiff cites much of the same medical evidence considered by the ALJ, she fails to point to any evidence that corroborates her allegation that these conditions significantly limited her ability to work. *See* ECF No. 8-1 at 15-16. As noted previously, "[t]he mere presence of a disease or impairment or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Flanigan v. Colvin*, 21 F. Supp. 3d 285, 300 (S.D.N.Y. 2014) (internal quotation and punctuation omitted). Rather, "[s]everity is determined by the limitations imposed by an impairment, and not merely [by its] diagnosis." *Tanner v. Comm'r of Soc. Sec.*, No. 5:15-CV-577 (TJM/ATB), 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016).

As noted previously, it is Plaintiff's burden to show that her impairments caused significant limitations in basic work-related functions for twelve-months, and Plaintiff has failed to make this showing. Furthermore, as the ALJ noted, Plaintiff did not indicate functional limitations from these impairments during either of her hearings. Tr. 413. Rather, Plaintiff testified at the 2016 hearing that other than her neck and low back pain, no other medical impairments kept her from working (Tr. 413, 45-47, 50, 56); and Plaintiff's counsel similarly asserted at the 2020 hearing that the only severe impairments were "chronic pain in the back and in the neck". Tr. 436. *See Stephanie Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) (mere diagnosis without evidence of severity of symptoms and functional limitations does not mandate a disability finding).

Even assuming *arguendo* that the ALJ erred at step two, where an ALJ proceeds past step two and considers the effects of all the claimant's impairments through the remainder of the sequential evaluation process, any error at step two is harmless. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's failure to find two impairments "severe"

at step two was harmless, because the ALJ considered them later in the evaluation process); *see also O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014) (holding that step two errors are harmless when the ALJ identifies other severe impairments and proceeds in the sequential evaluation process). Here, the record reflects that the ALJ considered all of Plaintiff's severe and non-severe impairments and limited her to a restricted range of light work, with no more than frequent feeling, which reasonably accounts for any remaining hand or wrist pain she might experience. Tr. 414. *See Cheryl S. v. Saul*, No. 20-cv-0378L, 2021 WL 1893474, at *2 (W.D.N.Y. May 11, 2021) ("Because the record did not indicate that plaintiff's [non-severe impairments] caused any particular exertional limitations, the ALJ's failure to include such limitations in his RFC finding was not improper."); *see also Terrance v. Berryhill*, No. 14-CV-708T(F), 2017 WL 9485694, at *9 (W.D.N.Y. June 26, 2017), *report and recommendation adopted sub nom. Terrance v. Colvin*, No. 114CV00708LGFMAT, 2017 WL 3393576 (W.D.N.Y. Aug. 8, 2017) (finding that because the ALJ reasonably found Plaintiff's carpal tunnel syndrome non-severe, the ALJ was not required to include related limitations in his hypothetical to the vocational expert).

Although not required to do so based on the record evidence showing minimal treatment, the ALJ nevertheless gave Plaintiff the benefit of the doubt by limiting her to frequent feeling to accommodate her carpal and cubital tunnel syndrome complaints. Tr. 413-14. Plaintiff has not shown that any further limitations were required, and as noted above, it is Plaintiff's burden to show that she cannot perform the RFC as found by the ALJ. *See Poupore*, 566 F.3d at 306. Because Plaintiff failed to produce evidence indicating that her cubital and carpal tunnel syndrome and right thumb and left wrist impairments limited her functional abilities, the Court finds no error. *See Jones v. Comm'r of Soc. Sec.*, 2018 WL 3829119, at *2-3 (W.D.N.Y. Aug.

13, 2018) (rejecting step two argument because plaintiff failed to show how the claimed impairment "impacted his ability to perform work-related functions").

Plaintiff's argument that the ALJ failed to follow the District Court's remand order, with respect to analysis of Plaintiff's cubital and carpal tunnel syndrome similarly lacks merit. *See* ECF No. 8-1 at 13. The Court's remand order noted that the previous ALJ decision did not specifically consider Plaintiff's carpal tunnel diagnosis to be sure that all her impairments were considered in determining the RFC. Tr. 491-92. As discussed above, this is exactly what the ALJ here did on remand. The ALJ's analysis was thorough, and Plaintiff fails to demonstrate that anything more was required.

Plaintiff next argues that the RFC was "internally inconsistent" in its requirements of lifting and carrying," because the ALJ found that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, but she could also carry 20 pounds continuously and 50 pounds occasionally. *See* ECF No. 8-1 at 18-21 (citing Tr. 415). Contrary to Plaintiff's argument, the ALJ properly considered the opinion evidence, as well as the other medical and non-medical evidence, and reasonably concluded that Plaintiff's conditions did not preclude the performance of a restricted range of light work, with the ability to lift 20 pounds at a time and frequently lift up to 10 pounds (which logically extends to the ability to carry at least those same 10 pounds on a frequent basis). Tr. 415. Thus, any alleged internal inconsistencies in the RFC notwithstanding, and as discussed in further detail below, Plaintiff has not shown that she lacked the RFC to perform her past relevant work as a nanny.

The ALJ first considered and assigned significant weight to Dr. Dave's November 2019 internal medicine consultative exam findings and opinion. Tr. 415, 419, 421-22, 702-12. *See Mongeur*, 722 F.2d at 1039 (medical opinions of consultative examining physicians can

constitute substantial evidence). Dr. Dave's narrative opinion noted only moderate limitations for, *inter alia*, repetitive bending, lifting, carrying, pushing, and pulling. Tr. 705. Such moderate limitations consistent with the lifting and carrying requirements of light work. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (moderate limitations supported RFC for light work); *Figgins v. Berryhill*, 15-cv-6748, 2017 WL 1184341, at *8 (W.D.N.Y. March 29, 2017) (affirming RFC for light work based in part on consultative examiner's assessment of moderate-to-severe limitations in lifting, squatting, bending); *Bishop v. Colvin*, 3:13-cv-1348, 2015 WL 792050, at *7 (N.D.N.Y. Feb. 25, 2015) (upholding RFC for light work where ALJ gave significant weight to consultative examiner assessed moderate-to-marked limitations for lifting, carrying, pushing and pulling).

Dr. Dave noted Plaintiff's reports of neck and low back pain, which were aggravated in part by lifting. Tr. 419, 703. However, as the ALJ noted, Plaintiff reported at least some relief from heat, medications, and an over-the-counter back brace. *Id*. On examination, Plaintiff appeared in no acute distress with normal gait and stance; she walked on her heels and toes without difficulty; used no assistive devices; needed no help changing for the exam or getting on and off the table; rose from a chair without difficulty; and her squat was full. Tr. 419, 704. Despite some abnormal curvature (kyphosis), range of motion deficits, and spasm in Plaintiff's cervical and lumbar spine, Plaintiff's straight leg raising was negative bilaterally; she had normal range of motion of the extremities; she had normal reflexes and sensation throughout; and she retained full strength in all extremities, with no muscle atrophy. Tr. 419,704-05.

In assigning Dr. Dave's opinion significant weight, the ALJ explained that the opinion was based on a clinical physical examination and was "further supported by and consistent with Dr. Dave's own unremarkable findings on examination." Tr. 421-22. *See* 20 C.F.R. §§

404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). In addition, the ALJ found the opinion was "generally consistent with the modest treatment records in the evidence, as well as [Plaintiff's] reported activity level, including [her] return to work with various employers during the period." Tr. 422. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ further noted that Dr. Dave had program knowledge regarding the requirements for establishing disability under SSA's regulations, given the doctor's status as a consultative examiner, "warranting significant weight given to this very detailed opinion." Tr. 422.

As the ALJ noted, Dr. Dave completed a detailed analysis of Plaintiff's physical functional abilities and "*specifically* opined that [Plaintiff] could frequently lift up to 10 pounds frequently, and up to 20 pounds occasionally, and carry up to 20 pounds continuously but up to 50 pounds occasionally."[3] Tr. 419 (citing Tr. 706) (emphasis added). Thus, the lifting and carrying limitations in the RFC finding mirrored the lifting and carrying limitations assessed by Dr. Dave. *See* Tr. 415, 706.

Plaintiff cites two cases to support her argument that the RFC was unsupported by substantial evidence based on the alleged internal inconsistency, neither of which the Court finds persuasive. *See* ECF No. 8-1 at 18-19. (citing *Crowley v. Berryhill*, No. 1:16-CV-00393-MAT, 2018 WL 5784513, at *3 (W.D.N.Y. Nov. 5, 2018)*; Lynch v. Comm'r of Soc. Sec.*, No. 4:14-CV-20, 2015 WL 2452412, at *8 (E.D. Tenn. May 19, 2015). First, the issue in *Crowley* involved

---

[3] According to the regulations. "frequent" means occurring from one-third to two-thirds of the time, while "occasionally" means occurring from very little up to one-third of the time. *See* SSR 83-10, 1983 WL 31251, at *5-6.

an internal inconsistency in the RFC finding only with respect to Plaintiff's ability to carry, not in lifting and carrying. *See Crowley*, 2018 WL 5784513, at *3. Unlike the present case, the ALJ did not rely on a medical opinion to formulate the carrying limitation. Accordingly, the Court found that the ALJ failed to explain how she reached her finding, or to provide any discussion to allow the Court to reconcile the inconsistency. *See id*. In *Lynch* (a case from another district, which is not binding on this Court), the ALJ incorporated conflicting limitations from one source's assessment, but other opinions to which the ALJ gave significant weight, did not include the same inconsistencies. *See Lynch*, 2015 WL 2452412, at *8. Thus, *Lynch* is clearly distinguishable from the case at hand. Accordingly, the Court finds that to the extent there was any internal inconsistency in the ALJ's RFC finding here, the finding was reasonably supported by Dr. Dave's detailed assessment and not contradicted by any other opinion.

The ALJ also considered the April 2014 internal medicine consultative examination findings of Dr. Siddiqui. Tr. 417, 286-91. As the ALJ noted, Plaintiff rated the intensity of her neck and back pain as only 1 to 3 out of 10. Tr. 417, 287. Upon examination, Dr. Siddiqui observed that Plaintiff was in no acute distress; had normal gait and stance and full squat; used no assistive devices; rose from a chair and walked on her heels and toes without difficulty; and did not need help changing for the exam or getting on and off the exam table. Tr. 417, 288. Her musculoskeletal exam showed full range of motion of the cervical spine, albeit with complaints of pain during neck rotation. Tr. 417, 289. Her thoracic spine showed no scoliosis, kyphosis, or other abnormalities. Tr. 289. Her lumbar spine showed various range of motion deficits, but straight leg raise testing was negative bilaterally. Tr. 417, 289. She displayed no sensory, motor, or reflex deficits, and no muscle atrophy. Tr. 289. A lumbosacral spine x-ray showed facet joint

arthropathy and degenerative spondylosis with straightening, but no compression fracture. Tr. 417, 291.

Based on his examination, Dr. Siddiqui opined that Plaintiff had only mild limitations in the ability to, *inter alia*, push, pull, or carry heavy objects. Tr. 417, 421, 290. While the ALJ granted Dr. Siddiqui's opinion little weight based on "the vagueness of the limitations" assessed and his failure to define terms for limitations such as "mild" (Tr. 421), Dr. Siddiqui's assessment of "mild" limitations on "carrying heavy objects" supported at least the ability to perform the lifting/carrying requirements of light work. Tr. 421, 290. *See Snyder*, 840 F. App'x at 643; *Figgins*, 2017 WL 1184341, at *8; *Bishop*, 2015 WL 792050, at *7; *see also Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (affirming the RFC determination where the ALJ in some instances deviated from opinions to decrease the plaintiff's RFC, based on other evidence in the record); *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (finding that an RFC for light work was supported by a consultative examiner's assessment including a direction that the claimant avoid "heavy" lifting and carrying).

Furthermore, the ALJ did not rely only on opinion evidence in assessing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56.

23

Moreover, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety). In reconciling the evidentiary conflicts, the ALJ here discussed the medical evidence throughout the record, as well as Plaintiff's limited and conservative course of treatment and her daily activities.

First, the ALJ discussed Plaintiff's treatment records from an emergency room visit around her alleged onset date in August 2012. Tr. 417, 278. As the ALJ pointed out, Plaintiff's back was non-tender with normal range of motion upon exam. *Id*. Plaintiff also reported no back pain or muscle pain (Tr. 276), and lumbosacral imaging four months later showed preserved vertebral heights and no evidence of fracture or significant degenerative changes (Tr. 275). Tr. 417. The ALJ also considered records of Plaintiff's back-pain treatment with Dr. Nagalla, where despite some range of motion deficits, Plaintiff repeatedly displayed normal gait and muscle strength in all extremities. Tr. 417-18 (citing Tr. 299-305, 310, 314-21, 325-27, 333-35, 337-38, 342-47, 355-56, 359, 363-67, 372-74, 376-77).

The ALJ also considered records of Plaintiff's pain management treatment at Advanced Pain & Wellness. Tr. 418. As the ALJ noted, upon initial exam in March 2016, Dr. Salcedo observed decreased range of motion in the neck and tenderness, but no obvious muscular atrophy, and tests were negative for typical radicular symptoms. Tr. 418, 383. Her lumbar exam showed decreased range of motion and significant tenderness, but her straight leg raise test was negative. *Id*. Her neurological exam was normal, with full motor strength, normal reflexes and intact sensation. Tr. 418, 384. In April 2016, Plaintiff seemed more comfortable, ambulated independently without support, and had fair upright posture and normal gait. Tr. 418, 396. In

May 2016, Plaintiff's musculoskeletal and neurological exams remained unchanged, and she reported her medications helped and caused no side effects, which the ALJ found "point[ed] to overall stable disease and symptoms." Tr. 418, 400-05.

The ALJ also considered records of Plaintiff's treatment with primary care provider Dr. Wadhwa. Tr. 418. As the ALJ noted, upon examination in June 2016, Dr. Wadhwa observed that Plaintiff's gait and reflexes were normal, and there was no tenderness in her cervical spine. Tr. 418, 992. Plaintiff reported that she had been babysitting her grandchildren. Tr. 992. The ALJ further noted that Plaintiff again reported in June 2017 that she had been "babysitting grandkids." Tr. 418, 994. In April 2018, Plaintiff's normal gait and normal upper and lower extremities were noted (Tr. 1001), and in July 2018 Plaintiff stated that she wasn't taking any medications for her back pain (Tr. 1003). As the ALJ also pointed out, Plaintiff presented for treatment of left hip pain in April 2019 after attempting a "a "plié kick," indicating a generally high level of exertional activity. Tr. 418, 1009-10.

The ALJ further considered records of Plaintiff's treatment with Dr. Norman at General Physician, PC. Tr. 418-20. In October 2019, Plaintiff complained of back pain from a recent injury when she bent over to lift a 50-pound box at the pizzeria where she worked, which was significantly greater than the 20 pounds of lifting required for Plaintiff's past relevant work as a nanny, performed at the light exertional level. Tr. 418, 1032. In any event, even following this temporary back injury, although Plaintiff displayed some discomfort and decreased range of motion, her neurological exam showed full strength and intact sensation. Tr. 1033-34. A lumbar MRI ordered by Dr. Norman in November 2019 showed only mild degenerative disc disease with facet osteoarthritis. Tr. 420, 1092. As the ALJ also noted, Plaintiff "denie[d] any change in [the] location, character or severity" of her chronic neck and back pain at a visit in February 2020;

exam findings remained generally unchanged; and Dr. Norman diagnosed only "muscular type pain" with "no red flag features." Tr. 419, 1037-38. Although Plaintiff scheduled a visit with a spine specialist later that month, she did so only after declining earlier appointments due to her work schedule. Tr. 419-20, 1038.

In addition, the ALJ considered records of Plaintiff's treatment with Dr. Bansal at Pain Rehab of WNY. Tr. 420. In June 2020, Dr. Bansal observed tenderness to palpation of the lumbosacral spine and muscle spasm, but Plaintiff otherwise had full strength and completely normal range of motion throughout. Tr. 420, 1047-48. Two weeks later, Plaintiff's exam findings were similarly unremarkable and showed full strength, with some reduced range of motion following a fall four days prior. Tr. 420, 1073-75. Sensation and reflexes were normal in her upper and lower extremities. Tr. 1075.

The ALJ also properly considered Plaintiff's limited and conservative course of treatment, which was generally consistent with a light RFC and inconsistent with allegations of disabling pain and limitations. Tr. 420. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2013) (evidence of a conservative treatment regimen supported the ALJ's determination that plaintiff's symptoms were not as severe as she alleged); *see also Snyder*, 840 F. App'x at 643 (conservative treatment may weigh against a disability finding) (internal citations omitted). As the ALJ noted, Plaintiff's treatment "consisted of little more than medication management," and she delayed seeing a recommended specialist and obtaining updated imaging, citing reasons such as her work schedule and the available appointments were "too early." Tr. 420, 1029-44; *see* SSR 16-3p, 2017 WL 5180304, at *9 (ALJ properly considers whether level of treatment is commensurate with level of complaints). Moreover, Plaintiff often admitted that her medications were helpful (*see, e.g.*, Tr. 379, 387, 400, 703, 1046), and at times, she was not taking any

medications for her back pain (see Tr. 1003). *See Snyder*, 840 F. App'x at 643 (ALJ properly noted that the plaintiff controlled his pain through conservative measures including medication and injections). Furthermore, in June 2020, Dr. Bansal noted that, although Plaintiff had tried physical therapy in 2010 with no improvement, she had not tried a TENS unit, and she had not tried chiropractic treatments or injections. Tr. 1046. Dr. Bansal also noted that that surgeon Dr. Huckell had determined that Plaintiff was "not a surgical candidate." *Id*.

Finally, the ALJ properly considered Plaintiff's daily activities, which were at odds with her claims of total disability and supported at least an RFC for light work, compatible with Plaintiff's past relevant work as a nanny. Tr. 420-21. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

For example, the ALJ noted that despite Plaintiff's complaints of disabling symptoms and limitations, she reported high impact activities such as attempting a plié kick. Tr. 421, 1009. Moreover, as recently as 2019, Plaintiff reported spending Saturdays with her grandchild at her daughter's home from 9:00a.m. to 5:00 p.m. playing with dolls and games while Plaintiff's daughter was at work, which Dr. Wadhwa characterized as "babysitting" in the treatment records. Tr. 421, 63-66, 994. Although Plaintiff testified at the 2020 hearing that she "visit[ed]" her

grandchildren and "didn't really babysit," the record suggests that she was able to maintain responsibility for a child and engage in activities notably similar to her past relevant work as a nanny, where she sat on the couch and read books with the children, occasionally picked up the baby to feed it, and sometimes made breakfast and served lunch. Tr. 469-70.

The ALJ also discussed Plaintiff's other daily activities, including personal care, cooking, attending to certain household chores, driving, and shopping, during the relevant period. Tr. 420-21, 220-33, 703; *see Poupore*, 566 F.3d at 307 (finding that the claimant's daily activities, including occasional cleaning, childcare, and driving, supported an RFC finding for light work). The ALJ also considered that Plaintiff "routinely performed work activity, albeit part time, throughout much of the period," including restaurant jobs preparing and packing food. Tr. 421, 445-47, 604-05, 625-26, 632-33; *see, e.g., Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (noting that while plaintiff's work during the relevant period did not meet the threshold for substantial gainful activity, she worked at levels consistent with light work); 20 C.F.R. §§ 404.1571, 416.971 (explaining that even if the work a claimant had done was not substantial gainful activity, it may show that the claimant can do more work than [he or she] actually did). Based on the foregoing, the ALJ reasonably found that Plaintiff's reported "range of activities outweigh[ed] the degree of disability [she] alleged," and was "not inconsistent with the residual functional capacity" for at least a range of light work. Tr. 421.

Furthermore, Plaintiff has not met her burden of proving that this alleged conflict in the RFC would result in a finding that she could not perform her past relevant work. Here, the VE at the 2020 hearing testified that an individual with limitations corresponding to the ALJ's RFC finding could perform Plaintiff's prior nanny work as she performed it, at the light exertional level. Tr. 467-77. The VE's testimony was based, in part, on Plaintiff's testimony that her job at

times included picking up and feeding a baby, but neither lifting nor carrying him much once he learned to walk. Tr. 469-70, 474. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, which is consistent with this testimony. Tr. 415.

Based on the foregoing, Plaintiff has not shown that she cannot lift at least lift 20 pounds at a time and frequently lift or carry up to 10 pounds. Furthermore, any "internal inconsistency" in the RFC was harmless. Plaintiff fails to demonstrate how resolution of the conflict would not lead to the same conclusion—that she could at least perform the lifting and carrying requirements of light work, which would permit her to perform her prior nanny work as actually performed. Therefore, even if the ALJ resolved the conflict, it would not change the overall outcome of her case. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand not warranted where alleged error would have no impact on the outcome of the case").

In her final argument, Plaintiff argues that the ALJ erred because he failed to evaluate whether Plaintiff's job as a nanny was performed under special conditions. *See* ECF No 8-1 at 21. According to Plaintiff, the evidence shows that her past work as a nanny consisted of "irregular hours and possible special arranged circumstances," which the ALJ failed to assess. *See id*. at 22-23.

At step four the ALJ determines whether a claimant can perform her past relevant work which must be both "done within the past 15 years" and performed at "substantial gainful activity[.]" 20 C.F.R. § 416.960(b)(1). If work is done under special conditions that take into account the claimant's impairment, such as permitting an employee to work irregular hours or under specially arranged circumstances, the work may not constitute substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1573(c), 416.973(c). Plaintiff bears the burden of establishing that

she was employed under special conditions such that her work did not constitute substantial gainful activity. *Figueroa-Plumey v. Astrue*, 764 F. Supp. 2d 646, 651 (S.D.N.Y. 2011) (citing 20 C.F.R. § 404.1512(a)); *see also Johnson v. Comm'r of Soc. Sec.*, 15-CV-0341, 2017 WL 1166348, at *3 (E.D.N.Y. Mar. 28, 2017) (explaining that the claimant has the burden of establishing that she worked under special conditions).

Special conditions include, but are not limited to: (1) requiring and receiving special assistance from other employees; (2) being allowed to work irregular hours or take frequent rest periods; (3) being provided with special equipment or assigned work especially suited to an impairment; (4) being able to work only because of specially arranged circumstances, for example, other persons helped in preparing for or getting to and from work; (5) being permitted to work at a lower standard of productivity or efficiency than other employees; and (6) being given the opportunity to work despite an impairment because of family relationship or past association with an employer. 20 C.F.R. § 404.1573(c).

Contrary to Plaintiff's argument, there was no reason for the ALJ to assess whether her prior work was performed under special conditions related to her impairments because there was no such indication in the record. In her Disability Report dated February 7, 2014, Plaintiff reported working from September 2006 to October 2010 at Calamar Construction caring for the owner's children for eight hours a day, five days a week. Tr. 196. Plaintiff further testified that she worked part time as an in-home nanny working 30 hours a week. Tr. 442. However, she later testified that the job was "like a family affair," and her employer "shuffled" Plaintiff's hours "wherever [her employer] wanted to," but sometimes she worked 40 hours or more per week Tr. 460. Thus, contrary to Plaintiff's characterization of her work hours, it does not appear that Plaintiff was "allowed to work irregular hours," due to her impairment, but rather, she worked

30-40 hours per week (sometimes more) according to the needs of her employer. Similarly, Plaintiff's testimony did not suggest that she worked under "specially arranged circumstances," but rather that she cared for two children, including a baby that she would pick up and feed, although she testified that she "didn't go out of her way" to "lug [the baby] around" once the baby learned to walk. Tr. 469-70.

The cases Plaintiff cites are distinguishable from the facts here. *See* ECF 8-1 at 23 (citing *Croce v. Acting Comm'r of Soc. Sec.*), No. 17-CV-440 (RRM), 2018 WL 4636815, at *6 (E.D.N.Y. Sept. 27, 2018) (ALJ did not address claimant's testimony that her employer allowed her to take 20 breaks per day and naps during work, and was on payroll for three days per week but only worked one or two days)); *Matthews v. Comm'r of Soc. Sec.*, No. 19-CV-6296, 2020 WL 3045858, at *4 (W.D.N.Y. June 8, 2020) (ALJ did not address VE testimony that being permitted to miss two days of work per month would constitute a special condition, where claimant's former employer indicated that she missed 18 shifts in ten months due to a medical condition).

Plaintiff also does not explain how Dr. Huckell's 2006 opinion (Tr. 270-71) "suggested" that her prior work was performed under special circumstances. *See* ECF No. 8-1 at 22. Moreover, Dr. Huckell's statement that Plaintiff had reduced her work to only 20 hours a week in 2006 was at odds with Plaintiff's own reports and testimony that she worked over 40 hours a week at times. Tr. 196, 270, 460. In any case, the ALJ found Dr. Huckell's opinion vague and gave it little weight. Tr. 421, 269-71. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (explaining that "[i]f the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Thus, Plaintiff did not meet her burden to show that she worked under "special conditions" not qualifying as substantial gainful activity, and the

ALJ properly deemed Plaintiff's nanny job as past relevant work. *See Figueroa-Plumey*, 764 F. at 651.

As previously noted, it is Plaintiff who ultimately bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and Plaintiff's daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

<b><u>CONCLUSION</u></b>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE